## THE INTERNATIONAL BANK, Respondent, v. WILLIAM MONTEATH, Appellant.

*Bill of Exchange—Liability of Bank—Failure to Protest—Title to Bill—Collateral Securities.*

When a bank, having a draft for collection, neglects to protest the same, it not being paid at maturity, whereby the drawer is released from liability thereon, such bank is liable to all damage sustained by reason of such neglect.

And such bank being so liable, paying said draft or a judgment recovered thereon, is vested with the legal title to the same, and may maintain an action thereon against the acceptor of the draft.

This action was brought to recover of the Defendant the amount of a bill of exchange for $2,316.58, drawn by Brown & King, of Toledo, Ohio, upon the Defendant, who resided at Buffalo, in this State. It was dated 19th August, 1857, was payable ten days after date, and was accepted by the Defendant. It was discounted by the Bank of Toledo, and was transmitted by that Bank to the Plaintiff for collection. When the draft matured, the Plaintiff neglected to protest it; so that the drawer was released from liability. The Bank of Toledo claimed damages for this neglect, and, after a controversy in the courts, judgment was recovered for it against the Plaintiff, in the payment of the judgment. The Bank of Toledo delivered the draft to the Plaintiff, who thereupon commenced this action.

The Defendant set up the defence, that the draft was transferred by the Bank of Toledo to the Plaintiff without consideration, and that therefore it was not the owner of the draft.

The answer also set up, by way of counter-claim, a demand against the Plaintiff, growing out of the alleged conversion of fifty shares of the stock of American Transportation Company belonging to the Defendant.

The only legal question in this case is, whether the payment by the Plaintiff of the judgment recovered against it by the Bank of Toledo operated to transfer the title in the draft to the Plaintiff. Of this there can be no reasonable doubt. The Bank of Toledo

willingly delivered possession of it to the Plaintiff, and with it transferred all its rights in relation to it to the Plaintiff. The Bank of Toledo, instead of suing the Plaintiff, could have sued the Defendant on his acceptance; but, as he was deemed insolvent, the Bank sued the Plaintiff for its neglect, and, on payment of the judgment, had a right to transfer it to the Plaintiff.

*J. H. Reynolds* for the Appellant.

*J. L. Talcott* for the Respondents.

GROVER, J.—The exceptions taken by the Defendant's counsel to the rulings of the Judge upon the trial, present for consideration the questions whether the Plaintiff was the owner of the draft in suit; and, second, whether the Judge erred in holding that the value of the American Transportation Company's stock could not be allowed to the Defendant as a counter-claim in this action.

Upon the question of Plaintiff's title to the draft in suit, the evidence showed that the draft was owned and held by the Bank of Toledo; that it was sent to the Plaintiff's endorser in the usual manner for collection; that the draft was not paid by the acceptor, the Defendant, at maturity; that the Plaintiff neglected to protest the draft, and to notify the drawer of its non-payment; that, for this neglect, the Bank of Toledo brought an action against the Plaintiff, and recovered therein a judgment for the amount of the draft, which was paid by the Plaintiff; that the Plaintiff, upon payment of the judgment, demanded the delivery of the draft to it; that the draft was thereupon delivered to the Plaintiff with the assent of the Bank of Toledo. These facts established a title in Plaintiff to the draft.

The only inference that can be drawn from the evidence is, that, upon payment of the judgment, the Plaintiff claimed the delivery of the draft to it as its property; that the Bank of Toledo recognized this claim, and, in pursuance thereof, delivered the draft to the Plaintiff as its property, so endorsed as to confer the title. This gave the Plaintiff a complete title, irrespective of the inquiry whether any was acquired by the recovery and payment of the judgment.

The question arising upon the counter-claim of Defendant, founded upon the Transportation Company's stock, arises out of the following facts : Prior to the time of the maturity of the draft in suit, the Defendant, being owner of the stock in question, delivered the certificate with the usual power of attorney for the transfer thereof to the Plaintiff as security for a debt which had been paid at the time of the maturity of the draft in suit at that time, the certificate and power remaining in the hands of the Plaintiff.

The Defendant testified that he made a sight draft upon Grant & Co., New York, for the amount of the draft in suit, and delivered the same to the Plaintiff, together with his check for the proceeds, for the purpose of paying the draft in suit, and told the Plaintiff he would hold the stock as collateral to the sight draft, the witness understanding that the Plaintiff would discount the sight draft. The sight draft was protested for non-payment, and defendant duly notified.

The Defendant, upon learning from the Plaintiff that the sight draft had not been discounted, requested the Plaintiff to deliver the stock to him, which the Plaintiff refused.

The case states that the Plaintiff gave evidence tending to show that the Defendant agreed that the Plaintiff might retain the stock as security for the payment of the draft in suit. The case further shows that at this time the stock was worth about four thousand dollars, but that subsequently the company failed and the stock became worthless, and so continued down to the trial. It thus appears that there was a conflict in the evidence whether the Defendant agreed that the Plaintiff might hold the stock as collateral to the sight draft, or as security for the payment of the draft in suit.

This was a question of fact to be determined by the jury, if material to the rights of the parties in the suit. It was material if its determination either way gave to the Defendant a valid claim against the Plaintiff, founded upon contract, for the loss of the stock, as in that case he would have had the right to avail himself of the demand as a counter-claim in the action. (Code, § 250.)

Had the jury found that the stock was only pledged to the Plaintiff as collateral security for the sight draft, it would have followed that the Plaintiff, at the time the Defendant requested him to return the certificate to him, had no claim to, or lien upon, the stock, as the bank never discounted the sight draft, or in any way acquired any interest therein, and it would also have followed that the Defendant could have maintained an action against the Plaintiff, upon its refusal to deliver to him the stock.

It is clear that an action of tort, under these facts, could have been maintained for the conversion of the stock. That would not have availed Plaintiff upon the trial, as, if a tort action only could have been sustained, it was not available as a counter-claim. The inquiry is, whether an action upon contract was not also sustainable. Where a party receives property as a pledge, the law implies a promise by the pledgee to restore such property, upon request to the pledger upon performance of the obligation to secure which the pledge was made, and, for a breach of this implied promise, an action founded thereon may be maintained. It is the case where the law affords two remedies, and in such cases it is well settled that the injured party may elect to pursue either.

It follows that the Defendant had the right to avail himself of the counter-claim in the action, in case the jury found that the Defendant only agreed that the Plaintiff might retain the stock as security for the sight draft. He clearly had no such right if he agreed that the Plaintiff might retain it as security for the payment of the draft in suit. That had never been paid. The Plaintiff, at the time, was the agent of the holder for its collection, and, although not authorized to receive collateral security for its payment, the owner had the right of ratifying such act, and thus making it valid. The Plaintiff had the right to retain the security until disaffirmance by the owner. There was no proof of disaffirmance, and, if the Defendant agreed that the Plaintiff might retain the stock until the draft was paid, he had no right to have it delivered to him, and he had no valid claim against the Plaintiff on account of the stock.

The Court decided that the counter-claim could not be allowed

in this action.    I think this ruling must have been understood as rejecting the counter-claim upon any view of the evidence, and as a refusal to submit any question to the jury in regard to it, so understood, it was erroneous.    It is true that the evidence that the Defendant pledged the stock as security for the payment of the draft in suit, may have been so conclusive as to justify the judge in directing a verdict for the Plaintiff.    But the case does not show this.    It merely states that the Plaintiff gave evidence tending to show such fact.    It may have been of much or little weight, for aught that appears.

My conclusion is, that the judgment should be reversed, and a new trial ordered.

Judgment reversed.

<div style="text-align:right">

JOEL TIFFANY,<br>
State Reporter.